UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JEANNE TELLONE, on behalf of CHARLES
TELLONE, deceased,

                                        Plaintiff,

          -v-                                          1:07-CV-953-DNH


COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskill, New York 12414

OFFICE OF REGIONAL GENERAL COUNSEL    SUZANNE M. HAYNES, ESQ.
SOCIAL SECURITY ADMINISTRATION
REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

          Jeanne Tellone brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) on

behalf of her deceased husband, Charles Tellone ("plaintiff"), to review a final decision of the

Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social

Security disability insurance ("DI") and supplemental security income ("SSI") benefits.  The

parties filed their briefs, including the Administrative Transcript on Appeal (cited to as "Tr."),
and the matter was submitted for decision without oral argument.

## II. __BACKGROUND__

Plaintiff first filed an application for SSI benefits on September 29, 1981.  His
application was denied on November 3, 1981, and he did not seek an appeal.  Nevertheless,
plaintiff's SSI application was reopened pursuant to the settlement order entered in
Stieberger v. Sullivan, 801 F. Supp. 1079 (S.D.N.Y. 1992).  (Tr. 397.)

While the Stieberger review of his initial SSI application was still pending, plaintiff
filed concurrent applications for DI and SSI benefits on January 20, 2000 in which he alleged
a disability onset date of December 2, 1999.  (Tr. 479-81, 978.)  The Commissioner denied
plaintiff's concurrent applications on April 21, 2000.  Id. at 430.  Plaintiff's initial application
for SSI benefits dating back to November 3, 1981 was again denied on May 29, 2001 after
reconsideration.  Id. at 961-63.  Afterwards, plaintiff made a timely request for a hearing
before an Administrative Law Judge ("ALJ").  Id. at 30.

Plaintiff died on May 10, 2003 prior to his hearing before the ALJ on February 3,
2004.  Id. at 977-80.  At the hearing, his former wife, Ms. Tellone, testified in support of his
application for benefits.  On February 19, 2004, the ALJ determined plaintiff was not entitled
to DI and SSI benefits after making several findings, including: (1) plaintiff met the special
insured status requirements of the Social Security Act from the alleged onset date of his
disability, December 2, 1999, until his date last insured, March 30, 2000; (2) he had a history
of alcohol and drug abuse, a heart valve replacement in 1981, alcoholic Hepatitis B and C,
hypertension, and dysthymic disorder; (3) his medical conditions did not meet or equal in
severity the clinical criteria of impairment provided in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4)

plaintiff had the residual functional capacity ("RFC") to perform light work if he refrained from using alcohol; and (5) plaintiff was not disabled in light of his age, education, and past work experience pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 202.10 & 202.17.  (Tr. 35.) On plaintiff's behalf, Ms. Tellone made a timely appeal of the ALJ's decision to the Appeals Council.

On July 19, 2007, the Appeals Council issued separate decisions as to plaintiff's applications for DI and SSI benefits.  With respect to the DI benefits claim, the Appeals Council determined there was no reason to review the ALJ's decision because, inter alia, the determination was supported by substantial evidence.  (Tr. 3.)  However, in consideration of plaintiff's SSI benefits applications, the Appeals Council retroactively dismissed his prior request for a hearing after determining that the ALJ should have declined to consider either of the SSI claims.  According to the Appeals Council,  Ms. Tellone was not entitled to a hearing in connection with plaintiff's SSI applications because plaintiff had died, he had not been living with Ms. Tellone during the six months prior to his death, and he never filed an interim assistance agreement.  Id. at 7; see also 20 C.F.R. § 416.1457(c)(4).  As a result, the Appeals Council determined that the ALJ's consideration of plaintiff's SSI claims was "of no effect," and the Commissioner's determination made on May 29, 2001 was therefore "final and binding."  (Tr. at 7.)

## III.  SOCIAL SECURITY DISABILITY CLAIM DECISIONS

### A.  Standard of Review of a Final Decision

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and whether the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, (2d Cir. 2009) (per

curiam) (citing <u>Machadia v. Apfel</u>, 276 F.3d 103, 108 (2d Cir. 2002)); <u>Martone v. Apfel</u>, 70 F.

Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir.

1987)).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

<u>Poupore</u>, 566 F.3d at 305 (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S. Ct.

206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the evidence

from both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight."  <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988)

(citing <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).  If

the disability determination is supported by substantial evidence, that determination is

conclusive.  <u>Id</u>.  However, "where there is a reasonable basis for doubting whether the

appropriate legal standards were applied," the decision should not be affirmed even though

the ultimate conclusion reached is arguably supported by substantial evidence.  <u>Martone</u>, 70

F. Supp. 2d at 148 (citing <u>Johnson</u>, 817 F.2d at 986).

  A reviewing court may enter "a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  42 U.S.C. § 405(g); see <u>Martone</u>, 70 F. Supp. 2d at 148.  "Remand is

appropriate where there are gaps in the record or further development of the evidence is

needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g);

<u>Martone</u>, 70 F. Supp. 2d at 148 (citing <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980)).  A

remand for rehearing directing the taking of additional evidence is warranted only if it is

shown that there is new, material evidence "'and that there is good cause for the failure to

incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of

Health and Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g),

as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies

the law or failed to provide a fair hearing." Id. at 644.  However, where the underlying

administrative decision is not supported by substantial evidence, reversal is appropriate

because there would be no useful purpose in remanding the matter for further proceedings.

Id. (reversing and remanding solely for calculation of benefits, subject to determination by the

district court of any motion by the agency to remand to consider new evidence); Parker, 626

F.2d at 235 (reversing and remanding solely for calculation and payment of benefits);

Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams,

859 F.2d at 261 (same).

### B.  The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In

addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled and is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment constitutes an impairment as listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); see also 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). A treating physician's opinion is afforded significant weight so long as it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id. The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step.  Perez, 77 F.3d at 46.  This step requires the agency to examine whether the claimant can do any type of work.  Id. §§ 404.1520(g), 416.920(g).  The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary."  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council.  Perez, 77 F.3d at 44.  If review is granted, the decision of the Appeals Council is the final decision of the Commissioner.  Id.  If, as with plaintiff's DI claim, review is denied, the final decision is that of the ALJ.  Id.  The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

## IV.  DISCUSSION

Ms. Tellone raises three issues in support of her late husband's applications.  First, she contends the ALJ failed to properly consider plaintiff's peripheral neuropathy in relation to step two of the five-step analysis.  Second, Ms. Tellone argues that the ALJ's RFC determination is not supported by substantial evidence.  Third, she argues that the relevant disability period for the SSI claims is from December 1, 1988 to the date of plaintiff's death, May 10, 2003.  (See Pl.'s Br., Dkt. No. 11, ¶¶ 1-3.)  Because the relevant time period under consideration affects Ms. Tellone's other arguments, that issue will be addressed first.

## A.  <u>The Relevant Time Period</u>

It is undisputed that plaintiff's eligible period for DI benefits was from his alleged disability onset date, December 2, 1999, to his date last insured, March 31, 2000, based upon the number of calendar quarters plaintiff worked prior to the alleged onset of his disability.  However, the parties dispute the relevant time period for plaintiff's SSI claims.  Ms. Tellone contends plaintiff was eligible for SSI benefits until the date he died, May 10, 2003, whereas the Appeals Council determined that the Commissioner's determination issued on May 29, 2001 was final as to plaintiff's SSI claims because the ALJ should never have granted plaintiff's request for a hearing filed on June 28, 2001.

The Appeals Council retroactively dismissed plaintiff's request for a hearing because he was not alive at the time the hearing was held.  (Tr. 6-7.)  In consideration of an application for SSI benefits, an ALJ may dismiss a hearing if the claimant (1) dies, (2) was not living with a spouse in the month he died or within six months prior to his death, and (3) did not authorize interim assistance reimbursement pursuant to § 1631(g) of the Social Security Act.  20 C.F.R. § 416.1457(c)(4); <u>see also</u> 20 C.F.R. § 416.542(b)(1).[1]  According to the divorce judgment entered on November 29, 2000, plaintiff abandoned Ms. Tellone on January 9, 1997 and had not lived with her for at least one year prior to November 16, 2000. (Tr. 11.)  Despite being provided notice of the Appeals Council's intention to dismiss plaintiff's prior request for a hearing, Ms. Tellone was unable to demonstrate that she was eligible to recover plaintiff's SSI benefits as a qualified spouse under 20 C.F.R. § 416.542(b)(1).  (Tr. 7.)

---

[1] The defendant does not contend there is a parallel limitation for applications for DI benefits.

In light of the divorce judgment, the Appeals Council correctly determined that the ALJ should have dismissed plaintiff's request for a hearing as to his SSI claims pursuant to 20 C.F.R. § 416.1457(c)(4).  Under Social Security Ruling 95-2c, the Appeals Council has the authority "to dismiss a request for hearing for a reason the Administrative Law Judge (ALJ) could have dismissed it, even though the ALJ held a hearing and issued a decision on the merits."  60 Fed. Reg. 31753-01, 1995 WL 358001 (June 16, 1995); see also Harper v. Sec. of Health and Human Servs., 978 F.2d 260, 264 (6th Cir. 1992).  Therefore, the Appeals Council properly dismissed plaintiff's SSI claims, and only plaintiff's claim for DI benefits from December 2, 1999 to March 31, 2000 remains for consideration.

## B.  Evidence of Plaintiff's Peripheral Neuropathy

Ms. Tellone contends plaintiff's peripheral neuropathy constituted a severe impairment or combination of impairments which significantly restricted his physical or mental ability to perform basic work activities as provided within 20 C.F.R. §§ 404.1520(c), 416.920(c).  In support of her argument, Ms. Tellone cites to thirteen separate entries within plaintiff's medical records indicating his gait instability, lower extremity weakness, ambulation difficulties, need for minor assistance showering and washing his lower body, and use of a walker or cane.  (Pl.'s Br., Dkt. No. 11, ¶ 14.)  However, only two of the cited entries reflect findings made prior to plaintiff's date last insured, March 31, 2000.

In order to be entitled to DI benefits, a claimant must establish that his impairment was of disabling severity prior to the expiration of his disability insurance.  See Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir. 1989) (citations omitted).  Of the two medical records compiled prior to March 31, 2000, neither record supports Ms. Tellone's argument that plaintiff's peripheral neuropathy constituted a severe medical impairment.  Although plaintiff's

hospital progress notes dated November 17, 1999 indicate he needed "minimum assistance" with dressing and washing his lower body, showering, and moving to and from the toilet (Tr. 702), plaintiff also received the highest possible scores for his sensory perception and mobility assessments. Id. at 706. Plaintiff's only below-perfect score at that time was with regard to his activity assessment in which he received a score of three out of four possible points. Id. Additionally, the opinion of Dr. C. Kleinerman, dated March 22, 2000, only states that plaintiff must be evaluated for muscle weakness and neuropathy and is devoid of any clinical findings. Id. at 738. Finally, the medical evidence collected after March 31, 2000 also lacks clinical findings to support Ms. Tellone's argument and is silent as to whether plaintiff's impairment was sufficiently severe prior to March 31, 2000. Therefore, there are insufficient medical findings to determine that plaintiff's peripheral neuropathy constituted a severe impairment, and the ALJ's step-two analysis is supported by substantial evidence.

### C. The RFC Determination

Ms. Tellone also challenges the ALJ's determination that plaintiff had the RFC to perform light work if he had refrained from consuming alcohol. See id. at 34. Notwithstanding a claimant's inability to engage in any substantial gainful activity due to his physical impairment, he will not be considered disabled if alcoholism is a contributing factor to the disability determination. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). A claimant's alcoholism will be considered a contributing factor if he would not be disabled but for his abuse of alcohol. 20 C.F.R. § 404.1535(b).

Plaintiff's alcohol abuse and dependence prior to March 31, 2000 was well documented. On May 12, 1998, plaintiff was hospitalized for alcohol detoxification. Id. at 575. At that time, plaintiff reported that he regularly drank one to two quarts of vodka on a

daily basis and his longest period of sobriety was seven months in 1993.  Id.  Plaintiff was hospitalized again on March 24, 1999, May 24, 1999, and November 17, 1999 for alcohol withdrawal seizures.  Id. at 617, 627-28, 711.  During each subsequent hospitalization, plaintiff reported consuming one to three quarts of vodka per day and admitted that he continually refused to comply with his treating physicians' advice to refrain from using alcohol.  Id. at 617, 628, 711.

Despite his alcohol dependence, plaintiff maintained full range of motion in his upper and lower extremities and experienced slightly to moderately diminished strength in his hip, knee, and ankle joints.  Id. at 637.  His upper body joints were assessed at full strength. Id.  Two state agency medical consultants opined that plaintiff could perform light work.  (Tr. 395, 891.)  Additionally, Dr. Peter Graham examined plaintiff on August 17, 2001 and opined that plaintiff could sit, stand, walk, lift, handle objects, hear, and speak.  Id. at 878.  Although he acknowledged that plaintiff's ability to engage in "[m]oderate activities may be limited by [his] underlying heart disease," Dr. Graham noted that plaintiff traveled unaccompanied on the subway, dressed himself without difficulty, was able to seat himself on the examination table, could perform a full squat, and had full range of motion in his spine and all joints without pain or swelling.  Id. at 877-78.

The only medical opinion evidence contrary to that of the two state agency medical consultants and Dr. Graham is the opinion of Dr. Cristiana Bortuzzo.  Id. at 724-27.  The Commissioner retains the authority to resolve conflicts in the medical evidence.  See Aponte v. Sec., Dep't of Health & Human Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984) (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426 (1971)).  Dr. Bortuzzo opined that plaintiff was "moderately to markedly impaired for repetitive carrying, lifting,

pushing, pulling, bending, walking, [and] standing in view of his history of aortic valve replacement." (Tr. 727.) However, Dr. Bortuzzo nonetheless concluded that plaintiff had a normal station and gait, no difficulty transferring himself to and from the examination table, was able to dress himself, and could perform a full squat. Id. at 726. In light of these clinical findings, the ALJ's decision to afford more weight to Dr. Graham's opinion and the supporting opinions of the two state agency medical consultants was supported by substantial evidence. Additionally, plaintiff's documented abuse of alcohol serves as substantial evidence in support of the ALJ's determination that plaintiff had the RFC needed to perform light work if he refrained from drinking.

## V. __CONCLUSION__

Plaintiff's SSI claims were properly dismissed because Ms. Tellone was incapable of demonstrating that she qualified as an eligible spouse to receive any underpayment of plaintiff's SSI benefits. Accordingly, the only issue remaining for consideration was whether plaintiff was disabled from between his alleged onset date, December 2, 1999, and his date last insured, March 31, 2000. With respect to the DI benefits claim, Ms. Tellone only challenged the ALJ's assessment of plaintiff's peripheral neuropathy at step two and the RFC determination at step three of the five-step analysis. Both of Ms. Tellone's arguments are unpersuasive in light of the lack of evidence showing that plaintiff's peripheral neuropathy was sufficiently severe prior to March 31, 2000 and the substantial evidence indicating that plaintiff was capable of performing light work but for his alcoholism.

Accordingly, it is

ORDERED that the determination of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

_____

United States District Judge

Dated: February 16, 2010
       Utica, New York